# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

ALFRED FLOWERS,

                       Plaintiff,

v.

CITY OF MINNEAPOLIS,
MINNESOTA, OFFICER BECKER, in
his individual and official capacities,
OFFICER TSCHIDA, in his individual
and official capacities, OFFICER
BARNETT, in her individual and official
capacities, PARK POLICE OFFICER
MOONEY, in his official and individual
capacities, MINNEAPOLIS PARK
BOARD, and JOHN DOES 1-5.

                       Defendants.

Civil No. 05-2484 (JRT/FLN)

**MEMORANDUM OPINION AND
ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

---

Jill Clark, **JILL CLARK, P.A.**, 2005 Aquila Avenue North, Minneapolis, MN 55427, for plaintiff.

James A. Moore, **OFFICE OF THE MINNEAPOLIS CITY ATTORNEY**, 333 South Seventh Street, Suite 300, Minneapolis, MN 55402, for defendants City of Minneapolis, Officer Becker, Officer Tschida, Officer Barnette, and John Does 1-5.

Karin E. Peterson and Ann E. Walther, **RICE, MICHELS & WALTHER, LLP**, 10 Second Street Northeast, Suite 206, Minneapolis, MN 55413, for defendants Park Police Officer Mooney and Minneapolis Park Board.

Alfred Flowers was arrested and charged with obstructing legal process and disorderly conduct. After a jury returned a not guilty verdict, he filed this action against

the City of Minneapolis, the Minneapolis Park Board, and officers of both entities, claiming the manner of his arrest and prosecution violated rights guaranteed him by state and federal law.  Defendants moved for summary judgment.  For the reasons discussed below, the Court grants the motion in part and denies it in part.

## BACKGROUND

Alfred Flowers went with his sister, Alisa Clemons, to the Urban League building in Minneapolis on the morning of September 27, 2003, to attend two NAACP meetings scheduled for that day.  Shortly after he had arrived for the first meeting, Reverend Al Gallmon, president of the local branch executive committee, asked Flowers to leave. Gallmon called Torrence Abercrombie, the Urban League facilities manager, to request assistance in ushering Flowers from the building.

Abercrombie called 911 to ask for additional assistance in ushering Flowers from the building.  The 911 dispatcher coded the call as priority 2, which means that officers can take up to 30 minutes to arrive.  No officers were dispatched as a result of the first call.  When Flowers did not immediately leave, Abercrombie made a second 911 call. This time Abercrombie told the operator that the male "unwant" was starting to get violent.  Minneapolis Police Officers Michael Becker and David Tschida drove to the Urban League building following the second 911 call, which was also coded as priority 2.

Flowers voluntarily left the Urban League building following the second 911 call. He then used his cell phone to call the Urban League president, Clarence Hightower, and returned to the building after reaching Hightower to make Abercrombie talk to

Hightower.  Abercrombie made a third 911 call when he saw Flowers returning to the building, but this time he did not tell the operator that the intruder had become violent. After Abercrombie talked to Hightower, Flowers again left the building.  By this time Officers Becker and Tschida were in the lobby, and they watched Flowers leave.  They then left the scene and cleared the first two 911 calls.

Minneapolis Park Board Officer Mooney was patrolling that morning and typed a query into his squad car computer to look for all active events.  The screen showed the third 911 call from the Urban League indicating that "one of the unwanted parties had returned," but it did not show the first two calls or indicate that the unwanted party had ever been violent.  Although the call was coded priority 2 and Mooney thought park officers were only to respond to priority 1 calls, he drove to the Urban League to investigate.  When he arrived, he saw Flowers walking away from the building and talking on his cell phone.  Mooney attempted to talk to Flowers, who offered to let Mooney talk to Hightower.  After Mooney declined, Flowers continued walking away from the building.

Mooney drove to the corner, parked his vehicle, and approached Flowers.  He asked for Flowers's identification, but Flowers denied the request, asking instead why it was necessary.  Shortly thereafter a description of the unwant came over the car radio that described Flowers.  Mooney then used a leg sweep to knock Flowers to the ground.  At some point in the encounter, Mooney had requested backup.  He held Flowers to the ground until Officers Becker and Tschida arrived, and the three officers then struggled

but eventually got Flowers into the squad car.  A crowd of onlookers from the Urban League watched the officers struggle with Flowers.

Mooney drove Flowers to the Fourth Precinct Stationhouse, the closest station, based on instructions from Tschida and Becker.  Flowers remained in the car with Mooney for approximately forty-five minutes while Mooney asked Flowers questions about his health and other items.  Mooney then drove to the back lot of the stationhouse to talk about the situation with sergeants and  other ranking officers, including another named defendant in this case, Sergeant Shannon Barnette.  The officers, who had heard that onlookers had come to the stationhouse to make allegations of excessive force, discussed whether to file charges against Flowers.  Mooney decided to charge Flowers with obstruction of legal process and disorderly conduct.

After consulting with the other officers, Mooney drove Flowers to the Hennepin County Medical Center.  Two of the sergeants, including Sargeant Barnette, also drove to the hospital.  Mooney took Flowers into the area of the hospital designated for special police matters. The officers placed Flowers on medical hold and told the treating nurses and doctors about the incident and Flowers' complaints of back and throat pain.  The treating physicians did not notice any trauma but noted his complaints as well as a "likely cervical strain."  Before leaving the hospital and releasing Flowers from custody, Mooney cited Flowers with disorderly conduct and obstructing legal process.

Officer Mooney went to the main transcription room of the Minneapolis Police Department to write his report along with Officers Becker and Tschida.  Mooney wrote that he had gone to the Urban League after learning that an intruder at the Urban League

had become violent.  He reported that Flowers evaded answering his questions and that Flowers reacted violently and took a bladed fighting stance after Mooney grabbed his arm.  He also noted that Flowers was relatively tall, with a muscular build, and that Flowers had started to move back to the building before being leg swept.  Mooney also reported that Flowers resisted arrest and that Clemons, Flowers' sister, interfered by pulling on Officer Becker's arm.  Becker made similar statements, but he also reported waiving a can of mace in front of the crowd.  Tschida also filed a report, stating in addition that Flowers had refused to leave the building when the officers were at the Urban League the first time.

Two days after the incident, the Community Prosecutor for the Fourth Precinct, Laufele Murphy, began examining the case.  Murphy initially dismissed the citation against Flowers to conduct an independent investigation of the matter.  He later decided to file a criminal complaint that charged Flowers with obstruction of legal process and disorderly conduct.  Murphy also charged Clemons with obstruction of legal process.

Clemons and Flowers proceeded to trial on the charges.  They first sought dismissal of the claims for lack of probable cause, but the state trial court dismissed the motion on the basis that the testimony of the officers provided probable cause.  At trial evidence was introduced contradicting the officers' reports, and witnesses also testified that officers used unnecessary force to restrain Flowers.  After a month long trial, a jury found Flowers and Clemons not guilty.

## PROCEDURAL BACKGROUND

Flowers filed this case based on claims that the officers used excessive force when they arrested him and that there was not probable cause to support his arrest or the criminal charges.   He asserts claims against the individual officers for malicious prosecution and excessive force.   He also asserts a malicious prosecution claim against the City of Minneapolis and the Minneapolis Park Board based on allegations that there is an unconstitutional policy or practice of bringing criminal charges against citizens to aid in the city's defense if it or its officers are later named as defendants in civil proceedings. As evidence of that policy, Flowers asserts in the complaint that investigators and officers assigned to investigate the incident at the Urban League failed to talk to any of the witnesses to the incident or to review all the videotapes of the footage.   The defendants filed answers denying the allegations in the complaint, claiming that the force used was necessary to effectuate the arrest and that there were sufficient grounds supporting the criminal charges.

In motions for summary judgment, the defendants claim Flowers cannot proceed on his excessive force charges because the officers used reasonable force and because Flowers did not suffer an injury as a result of the arrest.   They claim Flowers's allegations of police misconduct are unsupported by the evidence and deny any factual dispute exists as to whether the arrest or criminal charges were supported by probable cause to support the claims for malicious prosecution, citing the state trial court's conclusive determination that probable cause existed.   The defendants further contend that they cannot be liable for initiating the prosecution against Flowers because of

deposition testimony of Laufele Murphy that he made the decision to file the charges independently and free of pressure from the officers.

Flowers responded to the summary judgment motion with affidavits, declarations, and portions of deposition testimony. He claims that he was swept to the ground for no reason and that he was choked, kicked, and beaten even though he did not resist arrest. He claims to have told Mooney he was in pain after arriving at the station, and he asserts that officers at the hospital interfered with his care by giving statements to the treating professionals. As a result of the incident, he claims to have suffered back injuries and to have lost the ability to lift heavy objects.

For support of his excessive force claims, he submitted excerpts of testimony from the criminal proceedings as well as affidavits from many of the witnesses at the Urban League. Booker T. Hodges, who had been trained in police procedures, stated during the trial and in an affidavit that Flowers was not resisting arrest, that his eyes were "bulging" and "rolling back," and that Flowers could not breathe. He further states that the officers used deadly force by choking Flowers. Thomas Lott, who also witnessed the arrest, stated in his affidavit that Flowers was not struggling with the officers, but they nevertheless "started beating" him and made it difficult for him to breathe. Randolph Statten also witnessed officers try to get Flowers into the car, and he admitted in his affidavit to removing one of the officer's hands from Flowers's neck because Flowers "was trying to comply" with the officers and because it was necessary to "interfere to prevent [Flowers's] death." Mary Spratt also testified that Flowers's "eyes was bulging and his tongue was hanging out." The witnesses stated that the crowd was not hostile.

At argument on the motions for summary judgment, Flowers narrowed his claims. He now asserts four claims for relief: (1) false arrest against Officer Mooney, (2) excessive force against Officers Becker and Mooney, as well as (3) constitutional malicious prosecution and (4) state tort malicious prosecution against the city and Officers Becker, Mooney, Tschida, and Sargeant Barnette.  He dropped claims against the park board and does not make any claims against the John Doe defendants.  The defendants assert that summary judgment is appropriate on all four claims, claiming they did not violate Flowers's rights under the Constitution or state law.  The individual officers also claim they are entitled to qualified immunity.

During discovery, Flowers learned that Dana Banwer, Deputy of the Criminal Division of the Minneapolis City Attorney's Office, sent an email on October 18, 2003 to members of the city council and other city officials pertaining to the September incident at the Urban League.  Banwer sent an additional letter to the same parties on October 30, informing them of the decision to file a criminal complaint against Flowers.  Flowers claims not to have received either document during discovery, but he did obtain a copy of the October 30 letter through an independent third party.  He sought a copy of the October 18 email, but the city responded that no such copies existed.  The Magistrate Judge ordered the city to "undertake all available measures to attempt recovery of the email," but the city was unable to find it either in its hard drives or in the archives.

After the city was unable to recover the email Flowers filed a motion for sanctions due to spoliation of evidence, claiming the city either destroyed it or failed to take all available measures to find it.  He claims that the city did not run a search on the oldest

- 8 -

archived files and that the city should have put a litigation hold on all correspondences relating to this matter as early as the spring of 2004.   The city responds that it did not intentionally destroy the email and that its email retention policy is reasonable.

## ANALYSIS

### I.       SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court is required to view the facts in a light most favorable to the nonmoving party. *Jurrens v. Hartford Life Insurance Co.*, 190 F.3d 919, 922 (8th Cir. 1999). Summary judgment is to be granted where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### II.      FALSE ARREST

Flowers asserts a false arrest claim against Officer Mooney, claiming that the arrest was performed without probable cause in violation of his constitutional rights. Mooney responds that the state trial court conclusively established that the arrest was lawful and that Flowers cannot challenge that finding in this case.

It is "well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments" and gives rise to an action under 42 U.S.C. § 1983. *See Hannah v. City of Overland, Missouri*, 795 F.2d 1385, 1389 (8th Cir. 1986).  In determining whether probable cause exists, courts are to consider whether, based on the totality of the circumstances, the facts justify a "reasonably cautious police officer's belief" that the subject has committed or was committing a criminal offense. *See Anderson v. Cass County, Missouri* 367 F.3d 741, 745 (8th Cir. 2004).  An arrest is still lawful even if the arresting officer erroneously believed probable cause existed for the arrest so long as there was probable cause to arrest the plaintiff for some lawful reason. *See Devenpeck v. Alford*, 543 U.S. 146, 154 (2004).

Mooney maintains that collateral estoppel bars Flowers from arguing that there was not probable cause for the arrest because the state trial court conclusively determined when it denied Flowers's criminal motion to dismiss that probable cause supported the charges.  The doctrine of collateral estoppel applies to bar relitigation of issues where (1) the identical issue was raised in a prior adjudication, (2) there was a final judgment on the merits, (3) the estopped party was a party or in privity with a party to the prior adjudication, and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *See Willems v. Comm'r of Pub. Safety*, 333 N.W.2d 619, 621 (Minn. 1983).  The doctrine exists to bar "parties from relitigating issues that were actually litigated and necessary to the outcome of a prior judgment." *McKenzie Engineering Co. v. NLRB*, 373 F.3d 888, 891 (8th Cir. 2004).

As to the first element, whether the identical question was raised in the previous proceedings, it is necessary to identify the issue faced by this Court in these proceedings and compare it with the issue the state court faced when it ruled on the motion to dismiss. For Flowers to prevail in these proceedings, he must show there was no probable cause for his arrest at the time he was arrested. As to the criminal proceedings, the state court determined, based on the government's evidence, that a reasonable juror could conclude that Flowers was guilty of the charges alleged. The fact that a reasonable juror could conclude based on all the evidence that Flowers was guilty of the crime does not conclusively determine there was probable cause to support the arrest.

Such a holding is especially true in this case given that jurors will ultimately make a decision as to whether probable cause supported the arrest based almost exclusively on which witnesses to believe.[1] While the state court made its decision based on the assumption that jurors could believe the testimony of the police officers, that assumption does not bar jurors in this proceeding from deciding that Flowers and his witnesses are more credible. This conclusion is supported by the text of the state court opinion wherein the court noted that "a judge at a probable cause hearing must not evaluate credibility"

---

[1] Mooney asserts that the Eighth Circuit has already decided this issue in *Crumley v. City of St. Paul*, 324 F.3d 1003 (8th Cir. 2003). While the court in that case dismissed civil false arrest charges on the basis that the state trial court had determined probable cause supported the charges, it appears that the facts underlying the alleged criminal conduct in that case were undisputed. As a result, a finding by the federal court that probable cause did not exist that was based on the same undisputed facts on which the state court found that probable cause did exist would contradict the state court holding. As a result, collateral estoppel would bar the subsequent federal action in that case but not in the case presently before the Court. Moreover, there is no indication in that case that the state court expressly declined to rule on the legality of the arrest.

and that the question of whether the arrest itself was illegal was a finding it "need not and do[es] not make."

The issue faced by the Court in this case is therefore different than that faced by the state court during the criminal proceedings, and collateral estoppel is inapplicable to the facts of this case. *See State v. Robinson*, 262 Minn. 79, 88 (Minn. 1962) (describing the purposes of collateral estoppel as "eliminat[ing] the expense, vexation, waste, and possible inconsistent results of duplicatory litigation"). As a result, it is unnecessary to address the remaining elements of collateral estoppel. Because Mooney fails to raise any other basis on which to dismiss this claim, the motion for summary judgment on Flowers's claim for false arrest is denied.

## III. EXCESSIVE FORCE

Flowers also argues that the means used to effectuate the arrest violated the Fourth Amendment. He asserts excessive force claims against Mooney for initiating contact with him and leg sweeping him to the ground and against Mooney and Becker for kicking and choking him. The officers counter that they are entitled to qualified immunity on these charges because the amount of force used was reasonable under the circumstances.

The right of citizens to be free from excessive force is "clearly established" under the Fourth Amendment's prohibition against unreasonable seizures, and a violation of this right will support an action under 42 U.S.C. § 1983. *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). An inquiry in a Fourth Amendment case such as this, then, involves a determination of whether officers used "excessive force" to effectuate the arrest. *See,*

*e.g.*, *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005); *Crumley*, 324 F.3d at 1007. The use of force is excessive if it is not "objectively reasonable under the particular circumstances." *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994). When considering the circumstances, courts consider the threat posed by the subject, the severity of the crime, and whether the suspect resisted arrest. *Foster v. Metro. Airports Com'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). Force that later seems unnecessary does not violate the Fourth Amendment if it was reasonable at the time, giving consideration to the fact that the officer was forced to make a "split second judgment" in a "tense, uncertain, and rapidly evolving" situation. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

The facts, taken from the testimony of Flowers and that of several eyewitness to the encounter and assumed as true for purposes of this motion, establish that Flowers was standing next to Mooney when a description matching that of Flowers came over the radio. Without Flowers making an assertive movement, Mooney swept Flowers to the ground and held him until Officers Becker and Tschida arrived. The testimony indicates Flowers, who was not resisting, was then punched and kicked while officers brought him to his feet. Becker placed both of his hands around Flowers's neck, making him unable to breathe and causing his eyes to roll back into his head. Mooney then grabbed Flowers by the back and pulled him into the squad car while one of the officers pushed on his head.

The defendants raise three arguments in support of their summary judgment motions: (1) that force was necessary because Flowers made his body go rigid and that the extent of force was reasonable given the nature of the situation and the growing

crowd, (2) that Flowers did not suffer an injury of constitutional magnitude as a result of the arrest, and (3) that in any event they are entitled to qualified immunity. The Court will address each argument in turn.

The officers first seek summary judgment on the grounds that the force used was reasonable given that Flowers resisted arrest by making his body go rigid and that the crowd was growing hostile. While a factfinder may agree with the officers' assertions, Flowers has presented testimony from several witnesses stating that he was not resisting and that the crowd was not hostile. Given that the Court must construe all facts in favor of Flowers at this stage of the proceedings, the Court concludes that Flowers has submitted sufficient facts to preclude entry of summary judgment on this basis.

The officers next claim they are entitled to summary judgment because Flowers suffered only a de minimus injury that is not recognized by the Constitution. The only injury recognized by the doctors, a strained cervical, is according to the officers too minor to warrant constitutional protection. For support, they cite to two Eighth Circuit opinions, *Andrews v. Fuoss*, 417 F.3d 813 (8th Cir. 2005), and *Crumley v. City of St. Paul*, 324 F.3d 1003. In *Andrews*, the Court held that "very minor injuries," such as the inflammation of preexisting back injuries, were "precisely the type of injuries that preclude a claim for excessive force." *Andrews*, 417 F.3d at 917. Similarly, the court in *Crumley* determined that the absence of an injury "suggests . . . the force used here was reasonable," *Crumley*, 324 F.3d at 1008, especially given the absence of "any medical records indicating . . . longterm or permanent physical injury." *Id.*

The law in this circuit, however, only requires a plaintiff show an "actual" injury and not a "significant injury" to proceed on a claim for excessive force. *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999). This is especially true where, as here, there is a genuine factual dispute as to whether the plaintiff was resisting arrest. S*ee Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir. 2006); *Mayard v. Hopwood*, 105 F.3d 1226, 1228 (8th Cir. 1997); *Coleman v. Rieck*, 253 F. Supp. 2d 1101, 1107 (D. Neb. 2003). In circumstances such as these, then, the Eighth Circuit has permitted claims to proceed based on injuries similar to those alleged by Flowers in this case: (1) bruises and facial lacerations, (2) bruised knees and heightened blood pressure, (3) posttraumatic stress disorder, or even (4) small scrapes on a plaintiff's eyelid and legs. *See also Niznik v. City of Minneapolis*, 2007 WL 270416, at * 6 (D. Minn. 2007) (internal citation and quotations omitted). As a result, the Court finds that Flowers has submitted sufficient proof of an injury to proceed on his claims against Officers Becker and Mooney for excessive force.

Given that Flowers has submitted evidence supporting his allegations that he did not resist arrest, that the force used to effectuate the arrest was severe, if not life threatening, and that Flowers suffered an actual injury as a result of the arrest, the Court concludes there is a genuine issue of material fact as to whether Flowers's constitutional right to be free from excessive force was violated.

Even if a constitutional right were violated, however, the officers contend summary judgment is appropriate based on qualified immunity. The doctrine of qualified immunity shields government officers from liability for federal claims "unless the

officials' conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Cornell v. Woods*, 69 F.3d 1383, 1390 (8th Cir. 1995) (internal citations and quotations omitted).   To avoid summary judgment on a defense of qualified immunity, a plaintiff must (1) assert a violation of a constitutional right, (2) show that this right is clearly established, and (3) raise an issue of material fact as to whether the defendant would have known that the conduct in question violated the clearly established right. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996).

The right to be free from excessive force is clearly established, so the only question is whether a "reasonable official would understand his conduct violated that right in the situation he confronted." *Henderson*, 439 F.3d at 503.   Although the Court acknowledges Flowers has not alleged severe injuries as a result of the force used and the extent of injury is relevant to reasonableness of the force, *see Foster*, 914 F.2d at 1080, the Court finds that a reasonable officer would know the knocking down of a nonconfrontational suspect and using a potentially lethal choke hold on a suspect who is not resisting arrest was unconstitutionally excessive. *See Goff v. Bise*, 173 F.3d 1068, 1072-74 (8th Cir. 1999).   Assuming these allegations as true, as the Court must on these motions, the Court denies the motions of Mooney and Becker for summary judgment on these claims.[2]

---

[2]  It is not clear whether Flowers is also asserting a clam against the city for excessive force.  To the extent Flowers asserts such a clam, the Court grants summary judgment in favor of the city.   Flowers fails to present any evidence that the force used was a result of an unconstitutional "custom, policy, or practice" of the city, *Williams v. Butler*, 863 F.2d 1398,

(Footnote continued on next page.)

## IV.    MALICIOUS PROSECUTION

Flowers also asserts claims under state tort law and the United States Constitution for malicious prosecution.  He claims that Officers Mooney, Becker, and Tschida, as well as Sargeant Barnette, followed City of Minneapolis customs and policies by falsifying reports and testifying falsely to bring criminal charges against him.  He claims that the city routinely brings criminal charges, such as charges for obstruction of legal process and disorderly conduct, against citizens to give the city an advantageous position if the criminal defendants later bring civil actions against the city.[3]  The defendants counter that Flowers is barred by the finding of the state trial court that probable cause existed to challenge that finding in this litigation and that Flowers's unsupported allegations are insufficient to preclude entry of summary judgment.  They also claim that they are entitled to immunity on these charges and that the claims fail in any event because the decision to charge Flowers was made independently by the city attorney's office.

A claim for malicious prosecution will lie under Minnesota law where a defendant has maliciously instigated a prosecution without probable cause. *See Morgan v. McLaughlin*, 188 N.W.2d 829, 831 (Minn. 1971). To proceed on such a claim, a plaintiff must establish (1) that the criminal proceedings were initiated without probable cause or

---

(Footnote continued.)

1400 (8th Cir. 1988), and a municipality cannot be held liable on a respondeat superior theory. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389 (8th Cir. 2007).

[3]  Flowers refers to these charges in his briefing as stemming from the "misuse of the criminal justice system."

a reasonable belief that the defendant would be found guilty, (2) that malice motivated the initiation and prosecution of the charges, and (3) that the proceedings terminated in favor of the plaintiff. *See Kellar v. Vonholtum*, 568 N.W.2d 186, 192   (Minn. Ct. App. 1997).  It is undisputed that the underlying claims terminated in favor of Flowers, so the remaining issues are whether defendants initiated the proceedings without probable cause and whether malice motivated the charges.

Before reaching the issues of probable cause and malice, the Court must first address whether it was the officers who "initiated" the criminal charges.  Officers cannot be held liable for the initiation of or continuation of criminal proceedings where "the chain of causation between a police officer's unlawful arrest . . . and a subsequent [prosecution] is broken by the intervening exercise of independent judgment." *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999).  Such judgment is not exercised independently, however, where there is evidence the officers "misled or pressured the official who could be expected to exercise independent judgment." *Id.*; *Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (noting it is "long recognized that filing a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment") (internal quotation omitted).

Flowers maintains he has presented evidence indicating that the "chain of causation" between the officers and the filing of the criminal complaint was unbroken because the officers made false statements in their reports.  The prosecutor relied on

those reports, Flowers contends, so the officers can be liable for the initiation and continuation of the criminal proceedings.

Flowers ignores the fact that Laufele Murphy, the community prosecutor who made the decision to bring the charges, stated in his deposition that he only "reviewed the reports," that he did not speak to any of the defendants prior to filing the complaint, and that he made the independent decision to file the complaint free of any undue pressure. Flowers does not draw into question the veracity of Murphy's statements, and therefore fails to create a genuine issue of material fact sufficient to rebut the presumption that the prosecutor was not acting independently. *See Newman*, 457 F.3d at 994 (finding that "a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment").

It is therefore unnecessary to discuss the other defenses raised by the defendants. The Court concludes that as a matter of law the defendant officers are entitled to summary judgment on Flowers's claim for malicious prosecution under state law. While the Eighth Circuit has yet to determine whether a claimant can bring a constitutional claim under § 1983 for malicious prosecution, *see Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000), any such claim would require the claimant to prove "all common law elements of malicious prosecution . . . as well as proof of a constitutional violation." *Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc). Because Flowers is unable as a matter of law to prove the elements of the common law tort, the defendant officers are also entitled to summary judgment on Flowers's constitutional claim for malicious prosecution. Given that a municipality cannot face liability unless

"individual liability [is] found on an underlying substantive claim," *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005), the Court also grants summary judgment to the city on Flowers's claims for malicious prosecution.[4]

## V.     SPOLIATION OF EVIDENCE

Flowers moves for sanctions due to spoliation of evidence, claiming the city intentionally destroyed an October 18 email sent to city officials about the Urban League incident.   He claims the email would support his claims that the city engaged in a conspiracy to use the criminal justice system to deprive him of his right to seek civil relief on the claims alleged in this complaint and the email would identify the John Doe defendants.   According to Flowers, the city also failed to comply with the order of the Magistrate Judge because it could have run a more exhaustive search to find the email.

Sanctions due to spoliation of evidence are permitted upon a showing of the intentional destruction of evidence done for the purpose of suppressing the truth.   *See Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005).   The moving

---

[4] The Court notes that Flowers repeatedly refers in his briefing to substantive due process as well as his overarching argument that defendants conspired to abuse the criminal justice system in relation to his claim for constitutional malicious prosecution.   Given the Court's finding that he fails to set forth the elements for the state tort of malicious prosecution, it is unnecessary to address these arguments.   The Court notes, in addition, that a plaintiff cannot proceed on a malicious prosecution claim based on substantive due process. S*ee generally Albright v. Oliver*, 510 U.S. 266 (1994).

To the extent Flowers argues he can proceed on some other claim based on assertions he is the victim of an overarching conspiracy to misuse the criminal justice system to deprive him of his constitutional rights, the Court finds such statements insufficient to preclude entry of summary judgment in favor of the city. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir. 1994).

party must also demonstrate that the case against the other party will be unfairly prejudiced by the absence of the evidence to warrant the award of sanctions. *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004). In this case, Flowers has provided no basis for his assertion that city officials, including every council member as well as officials from the city attorney's office, deleted the email to suppress the truth in regard to the incidents at the Urban League or that the officials exercised bad faith when they failed to recover the email. Especially considering that there is no basis for concluding that the contents of the email would assist Flowers in this case, the Court denies the motion for sanctions.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     The motion for summary judgment filed by defendants City of Minneapolis, Officer Becker, Officer Tschida, Sargeant Barnette, and John Does 1-5, dated January 11, 2007 [Docket No. 42] is **GRANTED in part** and **DENIED in part**, and the motion for summary judgment filed by defendants Minneapolis Park Board and Park Officer Mooney dated January 9, 2007 [Docket No. 39] is **GRANTED in part** and **DENIED in part** as follows:

a.   Summary judgment is granted on all claims asserted against defendants City of Minneapolis, Minneapolis Park Board, Officer Tschida, Sargeant Barnette, and John Does 1-5.

b.   Summary judgment is granted to all defendants on claims for malicious prosecution.

c.   Summary judgment is denied as to clams against Officer Mooney for false arrest and excessive force.

d.   Summary judgment is denied as to the claim against Officer Becker for excessive force.

2.   Plaintiff's motion for spoliation of evidence [Docket No. 53] is **DENIED**.


DATED:  September 28, 2007                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                             United States District Judge